UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY IVY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18-cv-02052-MTS |
| ) | |
| SAINT LOUIS COMMUNITY RELEASE ) | |
| CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, Doc. [53]. Plaintiff failed to respond to the Motion in any fashion, and her time to do so passed months ago. *See* Doc. [52]. As a result, she has failed to put forth any evidence beyond the Complaint in support of her own claims, and the Court must take as true the facts provided by Defendants. Those facts demonstrate that Defendants are entitled to judgment as a matter of law, so the Court will grant the Motion.

**I.    BACKGROUND**

Defendants moved for summary judgment on November 5, 2020, filing with their Motion a Memorandum in Support and a Statement of Uncontroverted Material Facts ("SOF"), see Docs. [53]–[55]. Unsurprisingly given her management of this case,[1] Plaintiff's counsel filed no opposition whatsoever to Defendants' Motion. Under the Local Rules, Plaintiff's failure to

---

[1] As set out more fully in the Court's Order imposing sanctions on Plaintiff, Doc. [51], Plaintiff's counsel has repeatedly failed to comply with deadlines and the Court's Orders in this case. This is the second time Plaintiff's counsel has failed to even respond to one of Defendants' dispositive Motions—she also left unopposed Defendants' Motion to Dismiss until the Court granted her additional time to file a response. *See* Docs. [15]–[16]. According to Defendants, Plaintiff's counsel also failed to issue any interrogatories or requests for production of documents and took no depositions. Doc. [54] at 6.

1

respond in any fashion to Defendants' Motion means that "[a]ll matters set forth in [Defendants' SOF] shall be deemed admitted for purposes of summary judgment." L.R. 4.01(E); *see also Freeman v. Adams*, No. 1:12-cv-86-SNLJ, 2014 WL 1056760, at *5 n.4 (E.D. Mo. Mar. 19, 2014) ("The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1)."). The Court will thus set out the undisputed factual background as supplied by Defendants in their Motion and SOF.

Plaintiff Kimberly Ivy is a corrections officer at the St. Louis Community Release Center ("SLCRC"),[2] and she has been continuously employed by Defendant Missouri Department of Corrections ("MDOC") since 1996. Her allegations in this case begin with her claim that Captain Willie Coffman, one of her supervisors, gave her an inappropriate birthday card in March 2016.[3] The card's cover reads, "I suppose having sex with you on your birthday is out of the question[,]" and continues on the inside, "OK . . . then how about on my birthday? Happy Birthday." *Id.* The card is signed "Coffman" and also contains the handwritten date "June 6th."[4] Doc. [55-2] at 27. Ivy interpreted the card as an unwelcome invitation for sex, but she did not report the card until an interview for her below-discussed grievance on March 3, 2017. *See* Doc. [55-2] at 1–3. Ivy also testified that Coffman never made any other offers—verbal or otherwise—for sex, and he never mentioned the card after giving it to her. Doc. [55] ¶¶ 17–18.

Then, on December 31, 2016, Ivy reported to work early due to staffing shortages. She

---

[2] Former Defendant St. Louis Community Release center is now known as the Transition Center of St. Louis, according to Defendants. Doc. [55] ¶ 1 n.1.

[3] Coffman, in an interview for Plaintiff's MDOC grievance, admitted the handwriting in the card is his, though he denied ever giving Ivy the card. *See* Doc. [55-2] at 15.

[4] In his MDOC grievance interview, Coffman stated that his birthday is June 6.

2

worked for four hours as a unit officer and then worked her normal eight-hour shift in the property room. After that eight-hour shift, Ivy left the facility. Ivy was on the mandatory overtime list for that date. Coffman, not realizing that Ivy had worked the four hours prior to her regular shift, listed in a "shift summary" that Ivy abandoned her post. But Ivy was not the only corrections officer Coffman listed as having abandoned her shift; he also listed Michelle Wattree, whose name was also on the mandatory overtime list. *Id.* ¶¶ 4–11.

On January 4, 2017, Ivy filed a grievance alleging that she had "experienced harassment, defamation, and slander" because of Coffman, creating a hostile work environment and causing her to fear retaliation. Doc. [55-4]. An MDOC HR representative interviewed her on March 3, 2017 regarding her allegations. At the interview, Ivy asserted that Coffman's allegedly harassing behavior took place over the course of the past year. She specifically detailed the following instances in arguing that Coffman created a hostile work environment. Approximately one year before the interview, around March 2016, Coffman attempted to enter a negative employee performance log entry for Ivy's failure to conduct searches. However, Ivy "explained she was the only assigned staff member" to her post, and Coffman withdrew the negative log entry. Docs. [55] ¶ 15(b); [55-2] at 12. On November 18, 2016, Ivy arrived to work early. She went to the recreation yard to speak with some coworkers, and Coffman approached her to question why she was in the yard. Ivy protested that Coffman was singling her out and told him he was harassing her, and Coffman then left the yard. Docs. [55-2] at 12. Ivy also noted the December 31, 2016 shift-abandonment issue discussed above.

Ivy further alleged in her grievance interview that on January 20, 2017, Coffman sat in the dining hall while Ivy was working there. Ivy found Coffman's presence "intimidating," so she called the superintendent to report Coffman's behavior. Shortly thereafter, an associate

3

superintendent came to the dining hall and escorted Coffman from it; that associate superintendent later called Ivy and informed her Coffman was simply working on shift schedules and staff vacation time. *Id.*; Doc. [55] ¶¶ 15(e), 32. Ivy further reported that the next day, January 21, various additional staff members were working in the administrative office and going through personnel files. Ivy found this unusual, but Coffman was not present that day, and the staff was not looking into Ivy's personnel file in particular. Doc. [55] ¶¶ 15(f)–(h). On January 26, 2017, an investigator informed Ivy that administrative staff had received an anonymous call about her regarding a personal issue. Ivy does not allege the call was connected with Coffman, and she did not get in any trouble due to the phone call. *See* Docs. [55] ¶ 15(j); [55-1] at (32:23–33:16).

Finally, Ivy alleged that on February 8, 2017, she was assigned to retrieve a certain offender's property. She found cash in the offender's bags, which, according to Ivy, offenders are not permitted to have. The inventory list for the bag, signed by Coffman, did not include the cash. At her interview, Ivy claimed that Coffman placed the money in the bag in an effort to "set her up." *Id.* Ivy notified a supervisor of Coffman's omission, and Coffman was subsequently disciplined. *See* Doc. [55-2] at 13. Ivy, meanwhile, suffered no repercussions and was thanked by her supervisor for reporting Coffman's violation.

Ivy contends that Coffman engaged in the above allegedly harassing behaviors "in an attempt to 'get rid of her'" because she declined his overture in the birthday card, though she conceded that she never suffered any adverse employment action as a result of any of the above incidents. *See* Docs. [55] ¶¶ 22–28, 30–35; [55-2] at 14. Based on those facts, Ivy filed this lawsuit against Defendants SLCRC,[5] MDOC, and Anne Precythe, making Title VII claims of (1) sexual

---

[5] The Court previously dismissed SLCRC from the case. Doc. [19].

4

harassment and discrimination resulting in a hostile work environment[6] and (2) retaliation.  Doc. [1].  Defendants now move for summary judgment on all Ivy's claims.

**II.     LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotations marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"  *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)).  As discussed, Ivy's failure to oppose summary judgment means the Court must take as true the facts provided by Defendants.

**III.    DISCUSSION**

By failing to file any opposition to Defendants' Motion or otherwise provide evidentiary support for her case, Ivy has failed to carry her burden of demonstrating any of the necessary

---

[6] As pointed out by Defendants, see Doc. [54] at 8, it appears that Plaintiff attempted to make claims for both sexual harassment and sexual discrimination under Title VII in her Complaint.  *See* Doc. [1] at 3.  The Court will assume for purposes of summary judgment that Plaintiff indeed intended to make both claims.

5

elements of her claims. But even considering the facts and evidence Defendants provided in their Motion and SOF, Ivy's claims fail as a matter of law.

### A.  Defendant Precythe

The Complaint contains virtually no allegations against Precythe, asserting only that she is the director of MDOC, making her "responsible for the State of Missouri's state prisons, probation and parole board, community supervision centers and community release center." Doc. [1] ¶ 4. In the case caption, her name appears as "Anne L. Precythe, Director," under the name of Defendant MDOC. *See* Doc. [1] at 1. It is not entirely clear, based on the Complaint, whether Ivy intended to claim Title VII violations against Precythe in her individual capacity or her official capacity. Regardless of how Ivy styles her claims against Precythe, those claims fail.

To the extent Ivy asserts her claims against Precythe in her individual capacity, "[t]he Eighth Circuit has long held that a supervisory official sued in the official's individual capacity cannot be liable under Title VII." *Bonenberger v. City of St. Louis*, No. 4:16-cv-00788-PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (dismissing Title VII individual-capacity claims against police chief who undisputedly "exercise[d] supervisory authority over the [St. Louis Metropolitan Police Department]"); *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999) (finding proper the district court's dismissal of Title VII individual-capacity claim "because a supervisor may not be held liable under Title VI"); *Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (per curiam) (explaining that "supervisors may not be held individually liable under Title VII"). Precythe is therefore entitled to judgment as a matter of law on any Title VII claim against her in her individual capacity.

Insofar as Ivy additionally or alternatively seeks relief from Precythe in her official capacity, those claims are duplicative of her claims against the MDOC. *Bergfeld v. Bd. Of Elec.*

6

*Comm'rs for City of St. Louis*, No. 4:06-cv-1025-DDN, 2007 WL 5110310, at *2–3 (E.D. Mo. Apr. 5, 2007) (noting that "Title VII claims can only be brought against an employer," and holding that a "supervisor is considered an 'employer' when sued in his official capacity, but such a claim is duplicative if the employer and supervisor are both sued"); *Coller v. Dep't of Econ. Dev.*, 965 F. Supp. 1270, 1274–75 (W.D. Mo. 1997) (finding Title VII claims against supervisor were duplicative where plaintiff brought those claims against both supervisor and employer "because a suit against a supervisor in his or her official capacity is treated as a suit against the employer itself"). Plaintiff's claims against Precythe in her official capacity are therefore redundant, and Precythe is entitled to judgment as a matter of law on those claims. *See Bergfeld*, 2007 WL 5110310, at *3 (holding that Title VII official-capacity claims necessarily failed because "[a]ny claims against [defendants] as [plaintiff's] employment supervisors are duplicative of the claims against the Board [of Election Commissioners]"); *Bonenberger*, 2016 WL 5341113, at *2 ("It is proper for a court to dismiss, as duplicative or redundant, claims against an official sued in his official capacity that are also asserted against the official's governmental employer."); *Jones v. Onondaga Cnty. Res. Recovery Agency*, 973 F. Supp. 2d 159, 166–67 (N.D.N.Y. 2013) ("[B]ecause Plaintiff has named [plaintiff's government employer], the Court finds that Plaintiff's claims against the individual Defendants in their official capacities are redundant and, therefore, grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII claims insofar as he asserts those claims against the individual Defendants in their official capacities."); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006) (affirming dismissal of Title VII official-capacity claim against supervisor on grounds it was identical to claim against employer school district itself). The Court thus grants Precythe judgment on all Ivy's claims.

**B. Defendant Missouri Department of Corrections**

MDOC is likewise entitled to judgment on each of Ivy's claims. The Court first addresses her sexual discrimination and harassment claims before briefly discussing the retaliation claim.

*1. Sexual Discrimination*

Plaintiff has not provided any direct evidence of discrimination. As such, the Court "analyze[s] her claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1062 (8th Cir. 2020). To succeed on her claim under *McDonnell Douglas*, Ivy must first establish a prima facie case of discrimination by establishing that "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently." *Id.* If Ivy makes that showing, the burden shifts to MDOC to rebut the presumption of discrimination by providing a legitimate, nondiscriminatory reason for any adverse employment action. *Id.* Finally, if Defendants rebut that presumption, the burden shifts back to Ivy to show pretext. *Id.*

This claim fails for two dispositive reasons. First, Ivy has put forth no evidence as to the second or fourth elements of her prima facie case. Second, and most significantly, she expressly conceded that she experienced no adverse employment action stemming from the facts she alleged in this case. *See* Docs. [55] ¶¶ 22–28, 30–35; [55-2] at 14. Regardless of Ivy's concession, the Court finds that there was no adverse employment action. "Not everything that makes an employee unhappy is an actionable adverse employment action." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001). Instead, adverse employment actions involve "a material employment disadvantage, such as a change in salary, benefits, or responsibilities," *id.*, some examples of which "include termination, demotion, transfers involving changes in pay or working

8

conditions, and negative evaluations used as the basis for other employment actions." *Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 959 (8th Cir. 2015) (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999)). Ivy remains employed by MDOC, and she has not provided the Court with any evidence of other action by MDOC that negatively affected her employment. Her claim for sexual discrimination therefore fails. *See Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) (finding plaintiff could not establish a prima facie case of discrimination where she "suffered no termination, did not lose pay or benefits, and her job duties or responsibilities did not change").

   2. *Sexual Harassment*

To succeed on her claim of sexual harassment against MDOC for the conduct of its employee, Coffman, Ivy must show "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Gibson*, 960 F.3d at 1063 (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). The undisputed evidence before the Court does not support the fourth or fifth elements.

Beginning with the fourth, it is Ivy's burden to demonstrate both that her work environment was objectively hostile and that she subjectively perceived the environment as abusive. *Id.*; *see Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018) ("In order to show that the harassment affected a term or condition of employment, 'the conduct must be sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of the victim's employment.'" (quoting *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir 1997))). She has not done so. The Eighth Circuit has

9

emphasized that the standard for establishing a hostile work environment is "demanding," requiring extreme, "rather than merely rude or unpleasant," conduct. *Rester*, 739 F.3d at 1131. In determining whether Ivy was subjected to a hostile work environment, the Court must view the totality of the circumstances and consider factors such as the "frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with [the] plaintiff's performance on the job." *Henthorn v. Capitol Comms., Inc.*, 359 F.3d 1021, 1027 (8th Cir. 2004).

After giving consideration to each of Ivy's allegations, it is clear a reasonable person would not find her work environment objectively hostile. The birthday card Coffman gave Ivy was inappropriate, unprofessional, and offensive, but it cannot, by itself, meet the demanding standard of having affected Ivy's employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Hales*, 886 F.3d at 735 (explaining that an isolated incident is sufficient only where the incident is "extremely serious"). While the card understandably made Ivy uncomfortable, she testified that Coffman never made any other sexual overtures to her and never again referred to the card or its contents. Though offensive, this conduct does not rise to the extreme level required, as an isolated incident, to create a hostile work environment. *Cf. Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (finding conduct not severe or pervasive where coworker forcefully grabbed plaintiff's buttock and next day briefly blocked plaintiff's passage and joked about incident).

The remainder of Ivy's allegations, individually or collectively, can hardly be called objectively offensive, let alone "severe or pervasive." Some of the complained-of events—namely the additional staff members in the administrative office on January 21, 2017 and the anonymous

10

phone call on January 26, 2017—did not even involve Coffman. And none are severe enough to have objectively affected Ivy's work environment. Instead, many appear well within the bounds of ordinary supervisory conduct at a place of work. Take, for example, (1) that Coffman withdrew Ivy's negative log entry once informed that Ivy was the only staff member where she was working that day, and (2) Coffman's questioning of why Ivy was in the yard on November 18, 2016. To a reasonable person, in both instances Coffman appears to have simply been doing his job. Moreover, in both instances, Coffman promptly remedied the situation. The December 31, 2016 shift-abandonment incident is more of the same. The evidence before the Court suggests that Coffman marked Ivy as having left her post early before discovering she had worked an early shift; nothing about Coffman's action was inappropriate or hostile. To the extent Ivy argues Coffman specifically targeted her for reasons related to the birthday card, the Court is unconvinced because Coffman also included Ivy's coworker on the abandoned-post list.

The final two alleged incidents were no more extreme than the rest. Though she may have subjectively found it intimidating, Ivy has presented no evidence regarding Coffman's presence in the dining hall on January 20, 2017 from which a reasonable person could conclude that Coffman's behavior was "extreme" or that his presence affected Ivy's ability to work. Similarly, Ivy only speculates, without evidentiary support, that Coffman attempted to "set her up" via the cash-in-bag incident. Moreover, her supervisor thanked her for reporting Coffman's conduct, demonstrating that Ivy's workplace was not "permeated with discriminatory intimidation, ridicule, and insult" as a result of Coffman's actions. *See Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002).

Ivy has also failed to provide any evidence suggesting a connection between the birthday card and any of Coffman's subsequent conduct. Viewing her allegations in the aggregate, the

11

Court finds that Ivy has failed to show that she was subjected to harassment affecting a term, condition, or privilege of employment or that Coffman's actions created an objectively hostile work environment. *Cf. id.* (holding no hostile work environment where coworker, among other things, asked plaintiff to have a relationship with him, unnecessarily touched her hand multiple times, requested she draw a phallic object to demonstrate qualification for a position, and displayed a poster portraying the plaintiff as "president and CEO of the Man Hater's Club of America"); *Anderson v. Fam. Dollar Stores of Ark.*, 579 F.3d 858 (8th Cir. 2009) (concluding conduct was not sufficiently severe or pervasive where supervisor rubbed plaintiff's shoulders and back at multiple training sessions, called her "baby doll" during a phone call, accused her of not wanting to be "one of [his] girls," and, on a long-distance phone call, suggested she "should be in bed with him and a Mai Tai in Florida"); *McMiller v. Metro*, 738 F.3d 185 (8th Cir. 2013) (finding conduct insufficiently severe or pervasive where supervisor "kissed [plaintiff's] face on two occasions, placed his arms around her or attempted to do so three times, and requested that she remove an ingrown hair from an area near his chin"). She has thus failed to establish the fourth element of her sexual harassment claim.

The Court further finds that Ivy has provided insufficient evidence to demonstrate the fifth element: that MDOC should have known about the harassment and failed to address it. The evidence instead suggests that MDOC promptly dealt with all of Ivy's complaints about Coffman. When Ivy called a supervisor regarding Coffman's presence in the dining hall, the supervisor promptly escorted Coffman from the hall. Coffman was disciplined for failing to list the cash found in the offender bags, while Ivy was thanked for her report. And, finally, the MDOC appears to have conducted a full investigation into Ivy's grievance claims, including interviews of both Ivy and Coffman. *See generally* Doc. [55-2]. These actions reflect that MDOC actively sought to

address Ivy's complaints. *See Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 987 (8th Cir. 2016) (listing amount of time between notice and remedial action as factor to consider when assessing reasonableness of employer's actions); *Hales*, 886 F.3d at 735 ("An employer's liability turns on whether the employer was aware of the conduct and whether it took appropriate action to remedy the circumstances in a timely and appropriate manner."). Because Ivy has failed to establish the fourth and fifth elements of her sexual harassment claim, the Court grants MDOC summary judgment on that claim.

### 3. Retaliation

Ivy's retaliation claim is baseless for the same reason as her sexual discrimination claim. A prima facie claim for retaliation under Title VII requires a plaintiff to show (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) the adverse action was causally linked to the protected conduct. *Gibson*, 960 F.3d at 1064. As discussed above, Ivy has not established that she suffered any adverse employment action and instead admitted that she did not. *See Rester*, 739 F.3d at 1132 (finding Title VII retaliation claim failed for same reason as sex discrimination claim—lack of adverse employment action). MDOC is thus entitled to judgment on Ivy's retaliation claim as well.

### CONCLUSION

Ivy has failed to prove the elements of her Title VII sexual discrimination, sexual harassment, and retaliation claims. Furthermore, the undisputed facts establish that Defendants Anne Precythe and MDOC are entitled to judgment as a matter of law on all Ivy's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Anne Precythe and MDOC's Motion for Summary Judgment, Doc. [53], is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 28th day of May, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE